# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KISHA PACHECO, Administratrix of the Estate of Jo Anne Knight, Deceased, <br> Plaintiff <br><br> v. <br><br> GOLDEN LIVING CENTER - SUMMIT and EVELYN PEYATT, <br> Defendants | No. 3:10cv1641 <br><br> (Judge Munley) |

## MEMORANDUM

    Before the court for disposition is the motion to dismiss the complaint filed by Plaintiff Kisha Pacheco, Administratrix of the Estate of Jo Anne Knight, Deceased. The motion was filed by Defendant Golden Living Center - Summit (hereinafter "Golden Living").[1] The motion has been fully briefed and is ripe for disposition.[2]

---

[1] Defendant Golden Living filed and briefed a motion to dismiss. Defendant Peyatt filed a motion to join in Golden Living's motion and to adopt its briefs and argument. Accordingly, for the remainder of the opinion we will refer to only one motion to dismiss and we will treat it as if filed jointly by the defendants.

[2] Plaintiff never filed a brief in opposition to the motion to dismiss. Rather, she filed a "Response" to the motion to dismiss which reviewed and refuted the defendants' motion paragraph by paragraph. (Doc. 7, Plaintiff's Response). In many instances plaintiff responded by asserting that defendant had provided a legal conclusion "necessitating no answer." (See id. ¶¶ 21, 36-39, 50-53). Plaintiff's response cites to no caselaw whatsoever. At this stage of the proceedings, plaintiff should not file a paragraph by paragraph response to the motion. Instead, plaintiff should file a brief. See L.R. 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen

**Background**[3]

Defendant Golden Living operates as a nursing home in Wilkes-Barre, Pennsylvania. (Doc. 1-6, ¶ 4). At the times relevant to the complaint, Defendant Golden Living employed Defendant Peyatt. (Id. ¶ 6). Plaintiff's decedent Jo Anne Knight (hereinafter "Knight") became a resident of Golden Living on June 6, 2008. (Id. ¶ 9). Knight had a bank account with PennStar bank into which was deposited each month two pension checks and Social Security retirement benefits. (Id. ¶ 13). From these funds, payment was made for the premiums of a life insurance policy owned by Knight. (Id. ¶ 16).

Plaintiff Kisha Pacheco, Knight's daughter, was granted power of attorney over Knight in September 2008. (Id. ¶ 10). At some date, Defendant Peyatt or another of Golden Living's employees forged Pacheco's signature on documents that caused Knight's pension checks and social security benefits to be deposited directly into Golden Living's bank account (Id. ¶15).

Knight passed away on July 6, 2009. (Id. ¶ 26). Pacheco sought burial benefits under the life insurance policy, and the insurance company advised her that the policy had lapsed due to non-payment of premiums.

---

(14) days after service of the movant's brief . . . . Any party who fails to comply with this rule shall be deemed not to oppose such motion."). Such a brief is certainly an appropriate place in which to raise legal arguments and cite to relevant caselaw in opposition to a motion.

[3] As we address a motion to dismiss, for purposes of this memorandum we assume that the facts as alleged in the complaint are true. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (indicating that a court should accept all factual averments in the complaint as true when ruling on a motion to dismiss).

(Id. ¶ 27). Pacheco was unable to obtain insurance benefits to provide a timely burial for her mother. (Id. ¶ 31).

Based upon these facts, plaintiff instituted the instant action. Plaintiff asserts that defendants violated numerous federal and state statutes. Although the complaint is not separated into distinct counts, it appears that plaintiff seeks recovery under (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § § 1961, *et seq.*, (hereinafter "RICO"), (2) the Pennsylvania Survival Act, 42 PA. STAT. CONS. ANN. § 8302 and/or the Pennsylvania Wrongful Death Act, 42 PA. STAT. CONS. ANN. § 8301, (3) the Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. §§ 201-9.2 *et seq*, and under the Pennsylvania common law for (4) intentional interference with contractual relations and (5) infliction of emotional distress. Plaintiff filed the complaint in the Luzerne County Court of Common Pleas and Defendant Golden Living removed it to this court on August 6, 2010. (Doc. 1, Notice of Removal). Subsequently Golden Living filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Peyatt joins in the motion to dismiss. Plaintiff opposes the motion, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to the federal RICO statute, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

3

This case is before the court pursuant to defendants' motion to dismiss for failure to state a claim upon which relief can be granted filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint is tested.  Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiff must describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6)

4

motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997).  To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**Discussion**

Defendant moves for dismissal of the following claims:  RICO; violation of 18 U.S.C. § § 1963(f) and (m); infliction of emotional distress;, interference with contractual relations; violation of the Unfair Trade Practices and Consumer Protection Law;  wrongful death and survival action.  We will address each separately.

**I.  RICO**

Plaintiff's complaint alleges a RICO cause of action.  RICO criminalizes the conducting of an "enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962.  A plaintiff must plead the following to assert a proper RICO violation: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).  The phrase "racketeering activity" is defined in terms of activity that violates other laws, including more than fifty (50) specifically mentioned federal statutes, which forbid, for example, murder-for-hire, extortion, and various kinds of fraud.  See 18

U.S.C. § 1961(1); <u>Klehr v. A.O. Smith Corp.</u>, 521 U.S. 179, 183 (1997).

Although, RICO is generally criminal in nature, it also provides for civil remedies. As to a civil RICO action, "[a]ny person injured in his business or property by reason of a" RICO violation may recover, *inter alia*, treble damages. 18 U.S.C. § 1964(c). Plaintiff has brought such a RICO civil action.

Defendants raise several issues with regard to plaintiff's RICO cause of action. They argue that plaintiff has not pled properly a RICO "enterprise" and that plaintiff has not alleged a "pattern of racketeering activity." We will address each issue in turn.

**A. RICO enterprise allegation**

Defendant first argues that plaintiff has failed to allege that an "enterprise" existed for RICO purposes, and that, indeed, such an enterprise cannot be alleged. As set forth above, one of the crucial assertions that a plaintiff in a RICO action must plead is the existence of an "enterprise." <u>Lum</u>, 361 F.3d at 223. RICO defines "enterprise" as "any individual, partnership, corporation, association, or other **legal entity**, and any union or group of individuals **associated in fact** although not a legal entity." 18 U.S.C. §1961(4) (emphasis added). Thus, two types of associations can be alleged, either associations-in-fact or legal entities. <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981).

The Third Circuit Court of Appeals has held that in order to establish a RICO enterprise the following must be presented: "evidence of an ongoing organization, formal or informal and evidence that the various associates function as a continuing unit. In addition the enterprise must be shown to have an existence separate and apart from the pattern of activity

6

in which it engages." United States v. Riccobene, 709 F.2d 214, 221 (3d Cir. 1983) (internal quotation marks and citations omitted) overruled on other grounds Griffin v. United States, 502 U.S. 46 (1991). Defendant argues that the RICO allegations should be dismissed because the plaintiff has not alleged that Golden Living and Peyatt represent an ongoing organization; the manner in which the associates function as a continuing unit; or how the enterprise is an entity separate and apart from the pattern of activities in which it engages.

After a careful review, we disagree. The Third Circuit has explained that Turkette and Riccobene establish the elements that must be proved to recover under a RICO. The elements of proof are different from the allegations that must be made in the complaint. Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 790 (3d Cir. 1994). A plaintiff properly alleges an enterprise if the complaint sets forth the entities that make up the enterprise sufficiently to place the defendants on notice of the claims against them. Id. The elements need not be pled, because the plaintiff may not know all the details without having engaged in discovery. Id., see also Hollis-Arrington v. PHH Mort. Corp., 205 Fed. App'x 48, 54 (3d Cir. 2006) (explaining that "although a plaintiff is required to allege the existence of an 'enterprise,' she need not plead all three elements required to establish the existence of a RICO 'enterprise' in her complaint.").

In the instant case, the defendants are on notice from the complaint that the alleged enterprise is comprised of Golden Living and Peyatt. Those assertions are sufficient, and defendants' motion on this ground will be denied.

## B. Pattern of Racketeering Activity

In order to establish a RICO cause of action, a plaintiff must allege that a defendant operated or participated in the operation of an enterprise through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). In order to establish a pattern of racketeering activity, a RICO plaintiff must allege that a defendant engaged in two or more "predicate acts." Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990) ("We note that no defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern."). Defendants assume from the complaint that plaintiff intended to allege that the "predicate acts" are mail and wire fraud. This assumption appears valid as the plaintiff alleges that the defendants' actions violated both the mail fraud statute, 18 U.S.C. § 1341 and the wire fraud statute, 18 U.S.C. § 1343. (Doc. 1-6, Compl. ¶ 23).

Defendants argue that the plaintiff's allegations of fraud are insufficient. They argue that fraud allegations must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Defendants argue that plaintiff's allegations of mail fraud and wire fraud lack the specificity that Rule 9(b) requires. We disagree.

The Third Circuit Court of Appeals has explained that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent charges. It is certainly

8

true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them." Seville, 742 F.2d at 791.

In the instant case, plaintiff's complaint makes it clear that she alleges that an employee of Golden Living, Peyatt used forgery to obtain access to the decedent's pension and social security benefits and fraudulently deposited them into Golden Living's bank account. (Doc. 1-6, Compl. ¶ 29). These allegations certainly put the defendants on notice as to the circumstances of the alleged fraud. Thus, defendant's motion to dismiss on this ground will be denied.

Next, defendants argue that even if plaintiff has sufficiently alleged the predicate acts, these acts do not form a "pattern of racketeering activity. "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must demonstrate that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 239 (1989). Generally, then the predicate acts must meet the requirements of "continuity" and "relatedness." Id. Defendants assert that plaintiff meets neither requirement. We discuss each separately below.

### 1. Relatedness

The first factor to consider is "relatedness." Relatedness can be found where the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc., 492 U.S. at 240. "The relatedness test will nearly always be satisfied in cases alleging at least two acts of mail fraud stemming from the same fraudulent transaction-by definition the acts are related to the same

9

'scheme or artifice to defraud.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1414 (3d Cir. 1991).

When applied to the allegations of this case, we find that the predicate acts are related. The alleged mail fraud involves sending fraudulent forms to the decedent's pension funds and social security to have them directly deposit the checks into Golden Living's bank account. These acts amount to at least three separate predicate acts, assuming that a forged document was mailed to each entity. The acts are all related as they have a similar purpose, that is, fraudulently obtaining the decedent's funds. Also alleged in the complaint is that the wire fraud statute was violated. Although not explicit, it can be assumed that plaintiff alleges that this statute was violated by funds being transferred fraudulently from the pension funds and social security directly into Defendant Golden Living's bank account. This is clearly related to the mail fraud as it is the direct result of it. Thus, the relatedness test is satisfied.

### 2. Continuity

The second, and final, test that must be met for predicate acts to amount to a pattern of racketeering activity is the continuity test. The United States Supreme Court has set forth several illustrations of "continuity." For our purposes, the most important is: "[t]he continuity requirement is . . . satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business[.]" H.J. Inc., 492 U.S. at 243. In the instant case, at least as to the decedent, the defendants' "regular way of conducting" its otherwise legitimate business was to have the decedent's funds fraudulently deposited into its bank account. Additionally, the plaintiff alleges that the defendant acted in a

similar manner to other residents of the nursing home.⁴ We find, therefore, that the continuity test has been met.

Because the plaintiff has properly pled at least two predicate acts that meet the relatedness and continuity tests, we find that she has properly pled a pattern of racketeering activity. Defendants' motion to dismiss on this ground will thus be denied.

**II. Claims of violation of 18 U.S.C. § § 1963(f) and (m)**

Plaintiff's complaint alleges the defendants violated 18 U.S.C. § § 1693 (f) and (m). (Doc. 1-6, Compl. ¶ 25) ("The Defendants' conduct, either individually and/or jointly and severally was in violation of 18 U.S.C. § 1693f and 1693m")). Defendants argue that this claim should be dismissed as no such statute exists. After a careful review, we agree. Section 1693 provides in its entirety: "Whoever, being concerned in carrying the mail, collects, receives, or carries any letter or packet, contrary to law, shall be fined under this title or imprisoned not more than thirty days, or both." No section "f" or section "m" exists. Therefore, the portion of plaintiff's complaint alleging that defendants violated sections (f) and (m) will be dismissed.

**III. Claim for intentional or negligent infliction of emotional distress**

Plaintiff's complaint also contains allegations of intentional infliction of emotional distress. (Doc. 1-6, Compl. ¶ 37(f)). Defendants seek dismissal of this claim. We agree that is should be dismissed.

The Pennsylvania Superior Court has adopted the tort of intentional

---

⁴Plaintiff's allegations with regard to these other residents are not very specific, but such lack of specificity is to be expected as no discovery has yet occurred.

11

infliction of emotional distress by quoting section 46 of the Restatement (Second) of Torts: "'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" Hunger v. Grand Central Sanitation, 670 A.2d 173, 177 (Pa. Super. Ct.1996); see also, Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (finding that "[a]though we have never expressly recognized a cause of action for intentional infliction of emotional distress, and thus have never formally adopted this section of the Restatement, we have cited the section as setting forth the minimum elements necessary to sustain such a cause of action.").

Under Pennsylvania law a claim of intentional infliction of emotional distress requires that: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (1997). Additionally, under Pennsylvania law, to state a claim for infliction of emotional distress, the plaintiff must allege some physical injury caused by the defendant's conduct. Rolla v. Westmoreland Health Sys., 651 A.2d 160, 163 (Pa. Super. Ct. 1994) (explaining that "it is clear that in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury.").

The Pennsylvania Supreme Court has found that only the most serious conduct justifies recovery. "Liability has been found only where the conduct has been so outrageous in character, so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Motheral v. Burkhart, 583 A.2d 1180, 1188 (Pa. 1990) (quoting Restatement (Second) of Torts § 46, comment d). "'[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery.'" Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993)).

Although courts have been reluctant to find intentional infliction of emotional distress, they have recognized instances where the defendant's behavior was egregious and outrageous enough to justify imposing liability. See, e.g., Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 (3d Cir. 1990) (finding that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."); Papieves v. Kelly, 263 A.2d 118, 122 (Pa. 1970) (finding intentional infliction of emotional distress could lie in a claim that defendants intentionally prevented parents from recovering their son's corpse and buried it without their authorization).

Defendants claim that the complaint does not allege extreme and outrageous conduct by the defendants and that the plaintiff has failed to plead any specific emotional distress or physical injury from the alleged emotional distress.[5]  We agree with the defendant's that the plaintiff fails

---

[5]Plaintiff's complete analysis of this issue is one word, "Denied." (Doc. 7, Pl.'s Resp. 9).  Despite plaintiff's failure to analyze of this issue, we shall address it.

to allege any physical injury allegedly caused by the emotional distress. Thus, any claim for emotional distress will be dismissed.[6]

**IV. Intentional interference with contractual relations**

Plaintiff's complaint also asserts a cause of action for intentional interference with contractual relations between decedent and decedent's life insurance company and banks. (Doc. 1-6, Compl. ¶¶ 35-36, 41(e)).

To establish a cause of action for intentional interference with contractual relations, a plaintiff must establish:

> (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

Foster v. UPMC S. Side Hosp., 2 A.3d 655, 665-66 (Pa. Super. Ct. 2010).

Defendants argue that plaintiff's interference with contractual relationship claim should be dismissed because plaintiff has failed to demonstrate that she has a contractual relationship with a third party. We disagree.[7] A broad reading of the complaint indicates that plaintiff has alleged contractual relationships. Although not overly detailed, it can be

---

[6] To the extent that plaintiff's complaint asserts a cause of action for negligent infliction of emotional distress, it shall also be dismissed. As with intentional infliction of emotional distress, a plaintiff must allege that she suffered physical injury as a result of the defendants' conduct. Toney v. Chester County Hosp., 961 A.2d 192, 199 (Pa. Super. Ct. 2008). As set forth above, plaintiff has not alleged a physical injury.

[7] Once again, the plaintiff's respond to the defendants' arguments with a single word, "Denied." (Doc. 7, Pl.'s Res. 9).

14

inferred from the complaint that plaintiff's decedent had a contractual relationship with PennStar Bank, the Social Security Administration, the Archdiocese of New York, Prudential and/or New York Life Insurance Company. (Doc. 1-6, Compl. ¶ 35). These contracts evidently dealt with either the direct deposit of pension/social security benefits or the payment for life insurance premiums. The complaint asserts that the defendants interfered with this relationship by forging documents to have the pension/social benefits deposited into Golden Living's bank account and to cause the premiums on the life insurance policy to go unpaid. (Id. ¶ ¶ 27 - 29). Accordingly, we find defendants' argument to be without merit and we will deny the motion to dismiss this cause of action.

**V. Unfair Trade Practices and Consumer Protection Law**

Another cause of action asserted in the complaint is for damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 PA. STAT. §§ 201-9.2 *et seq*,

The UTPCPL allows a plaintiff a private cause of action where she has purchased or leased "goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful[.]" 73 PENN. STAT. § 201-9.2. Defendant argues that plaintiff has failed to plead that she purchased or leased any goods or services from defendants. We disagree. The complaint can be read to allege that plaintiff's decedent purchased nursing home care from Defendant Golden Living. The UTPCPL applies to nursing homes. Chaflin v. Beverly Enter., Inc., 741 F. Supp. 1162, 1175-76 (E.D. Pa. 1989), see also Zaborowski v. Hospitality

Care Ctr. of Hermitage, Inc., 60 Pa. D. & C. 4th 474, 493-94 (Pa. Com. Pl., Mercer County, Dec. 10, 1992) ("Thus, this court holds that a plaintiff can maintain a private cause of action against a nursing home under the UTPCPL based only upon the non-medical services provided by the nursing home."). Defendant has cited no law to the contrary. Accordingly, we find that plaintiff's UTPCPL claim should not be dismissed.
73 PA. STAT. § § 201-9.2 *et seq*,

**VI. Wrongful Death Act**

Plaintiff's complaint also contains a cause of action under the Pennsylvania Wrongful Death Act, 42 PA. CONS. STAT. ANN. § 8301. (Doc. 1-6, Compl. ¶ 40). Defendants argue that a plaintiff may sue under the Wrongful Death Act, only if she claims that the defendants caused the decedent's death. Plaintiff does not allege that defendant's caused the decedent's death, therefore, the Wrongful Death claim should be dismissed. We agree.

The Wrongful Death Act provides: "An action may be brought, under procedures prescribed by general rules, **to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another**[.]" 42 PA. CONS. STAT. ANN. § 8301 (emphasis added). The instant case contains no allegation that the defendants brought about the decedent's death. Therefore, a cause of action for Wrongful Death is inappropriate, and it will be dismissed.

**VII. Survival Action**

Plaintiff also has a claim under the Pennsylvania Survival Statute. 42 PA. CONS. STAT. ANN. § 8302. The Survival Action Statute provides that a cause of action survives the death of a plaintiff or defendant. Id.

Specifically, it provides: "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." Id. Defendants claim that plaintiff's claim under the Survival Action Statute should be dismissed because all of plaintiff's substantive claims should be dismissed. As set forth above, however, the court has determined that plaintiff has properly asserted several causes of action. Therefore, we need not dismiss the plaintiff's Survival Statute allegations.

**Conclusion**

For the reasons set forth above, the defendants' motion to dismiss plaintiff's complaint will be granted in part and denied in part. It will be granted with respect to the claims that defendants violated 18 U.S.C. §§ 1693 (f) and (m); the claims for negligent or intentional infliction of emotional distress; and the claim under the Wrongful Death Act. The motion will be denied in all other respects, which will leave plaintiff with the following causes of action: RICO; intentional interference with contractual relations; UTPCPL, and Survival Statute Action. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KISHA PACHECO, Administratrix of the Estate of Jo Anne Knight, Deceased,
Plaintiff

v.

GOLDEN LIVING CENTER - SUMMIT and EVELYN PEYATT,
Defendants

No. 3:10cv1641

(Judge Munley)

## ORDER

    **AND NOW**, to wit, this 23rd day of February 2011, the defendants' motions to dismiss (Docs. 2 & 4) are hereby **GRANTED** in part and **DENIED** in part. They will be granted with respect to the claims that defendants violated 18 U.S.C. § § 1693 (f) and (m); the claims for negligent or intentional infliction of emotional distress; and claim under the Wrongful Death Act. These claims are thus dismissed.

    The motions are **DENIED** in all other respects.

                                           **BY THE COURT:**

                                           **s/ James M. Munley**
                                           **JUDGE JAMES M. MUNLEY**
                                           **United States District Court**